STATE OF NORTH CAROLINA v. ROY EDWARD YOUNG

No. 832SC287

(Filed 6 December 1983)

1. **Criminal Law § 75.7— statements by officer—reasonable expectation of incriminating response—custodial interrogation**

    Statements made by a police officer that he wondered who owned a paper bag with a pocketbook concealed inside and that it belonged either to defendant or to another named person were of such nature that the officer should have reasonably known that they might elicit an incriminating response from defendant, and defendant's response that the pocketbook was his was inadmissible in defendant's trial for possession of narcotics found therein where defendant had not been given the *Miranda* warnings.

2. **Criminal Law § 75.5— in-custody statements—necessity for Miranda warnings—knowledge by defendant of rights**

    The trial court erred in admitting defendant's in-custody statements made without the benefit of *Miranda* warnings on the ground that defendant knew of his constitutional right to remain silent and that anything he said might be used against him. Furthermore, the admission of the statements constituted prejudicial error where defendant's admission was the primary evidence of the ownership of a pocketbook in which narcotics were found.

APPEAL by defendant from *Bruce, Judge.* Judgment entered 28 October 1982 in Superior Court, WASHINGTON County. Heard in the Court of Appeals 15 November 1983.

Defendant appeals from a judgment of imprisonment entered upon his conviction of felonious possession of marijuana and LSD.

*Attorney General Edmisten, by Assistant Attorney General Douglas A. Johnston, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Lorinzo L. Joyner, for defendant appellant.*

WHICHARD, Judge.

## I.

Defendant contends, *inter alia*, that the court erred in admitting his in-custody statements made without the benefit of the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966). We agree, and accordingly award a new trial.

## II.

The pertinent facts are:

As police prepared to take defendant into custody on unrelated charges, they observed him "lunging" toward an acquaintance's car and apparently placing a brown paper bag inside it. After defendant left the scene with one officer, another officer approached the car, in which two men were sitting. He saw a brown paper bag in the back with a pocketbook protruding from it, and asked the driver if the bag belonged to him. The driver answered no. The officer also requested and received the bag and took it to the sheriff's department.

The court found that as the officer walked into the sheriff's department "he was strutting and holding up the pocketbook and paper bag with the pocketbook concealed inside"; and that the following conversation ensued:

OFFICER: "I wonder whose this is."

DEFENDANT: "It ain't mine. You didn't get it from me."

OFFICER: "I wonder whose this is."

DEFENDANT: "It ain't mine."

OFFICER: "It's yours or Duke's one."

DEFENDANT: "It's mine, I'm not going to get Duke in trouble."

The officer then searched the pocketbook and found controlled substances.

The court also found that at the time defendant made the statement he was in custody, and the officers had not "warned [him] of any rights"; and that "[t]he nature of [the] statements was

such that there was a reasonable possibility that [they] might invoke a response from the defendant." Competent, uncontroverted evidence supports these findings.

The court further found, however, on the basis of an extended discussion with defendant in chambers, in which defendant demonstrated a general understanding of criminal procedure, that

[n]otwithstanding the fact that the defendant had not been warned of his right to remain silent and that anything he said could be used against him in Court, the defendant knew of his constitutional right to remain silent and knew that anything he said might be used against him in Court.

It then found, on that basis, that defendant's statements in response to the officer's statements "were made freely, voluntarily and understandingly . . . with full understanding of his right to remain silent and with full understanding that his statement would be used against him in court"; and it ordered the statements admitted.

### III.

[1] Absent required warnings prior to interrogation, the Constitution of the United States precludes admission of statements, whether exculpatory or inculpatory, obtained during custodial interrogation of a criminal defendant. *Miranda v. Arizona, supra; see State v. Clay*, 297 N.C. 555, 256 S.E. 2d 176 (1979). Under some circumstances actions or statements of officers may evoke a spontaneous statement by a defendant which may be admissible even absent the warnings. *See, e.g., State v. Ladd*, 308 N.C. 272, 279-81, 302 S.E. 2d 164, 170-71 (1983). However,

the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect.

*Rhode Island v. Innis*, 446 U.S. 291, 300-01, 64 L.Ed. 2d 297, 307-08, 100 S.Ct. 1682, 1689-90 (1980).

As noted above, the court found that the nature of the statements by the officer here "was such that there was a reasonable possibility that [they] might invoke a response from the defendant." That finding evoked the *Miranda* safeguards. *Id.* Admission of defendant's statements, in the absence of *Miranda* warnings, thus was constitutional error.

## IV.

[2]  The basis on which the trial court nevertheless admitted the statements, *viz*, that "[n]otwithstanding the fact that the defendant had not been warned of his right to remain silent and that anything he said could be used against him in Court, the defendant knew [these things]," is legally untenable. The State has not cited, nor have we found, any authorities which gloss the *Miranda* doctrine in this manner. On the contrary, it has been held that the protection afforded by the requirement of *Miranda* warnings exists for all, even a lawyer who was necessarily cognizant of his rights. *United States v. Farinacci-Garcia*, 551 F. Supp. 465 (D. Puerto Rico 1982). The court so holding stated:

> The government's contention that, because [defendant] is a lawyer who is necessarily cognizant of his rights, the absence of *Miranda* warnings prior to custodial interrogation may somehow be excused has no support in constitutional case law. No consideration relevant to the constitutional protection against self-incrimination suggests any deviation based on distinct groups or classes of individuals who have knowledge of the law. The protection exists for all. It does not in any manner depend on the extent of the knowledge or notice of the state of the law that an individual may possess. Such a limitation could, indeed, lead to absurd and arbitrary distinctions.

*Id.* at 476.

## V.

The State has not contended that admission of the statements was not error. It has argued, instead, that the admission was harmless in light of other circumstantial evidence tending to incriminate defendant.

> Because [these] statement[s] [were] introduced in violation of defendant's constitutional rights under the Fifth and

Fourteenth Amendments, he is entitled to a new trial unless we determine that the erroneous admission of this evidence was harmless beyond a reasonable doubt. G.S. 15A-1443(b). *See Chapman v. California*, 386 U.S. 18, 24, 17 L.Ed. 2d 705, 710-11, 87 S.Ct. 824, 828 (1967). To find harmless error beyond a reasonable doubt, we must be convinced that there is no reasonable possibility that the admission of this evidence might have contributed to the conviction. *Fahy v. Connecticut*, 375 U.S. 85, 86-87, 11 L.Ed. 2d 171, 173, 84 S.Ct. 229, 230 (1963). *See also State v. Castor*, 285 N.C. 286, 292, 204 S.E. 2d 848, 853 (1974).

*Ladd, supra*, 308 N.C. at 284, 302 S.E. 2d at 172. Here, defendant's admission was the primary evidence of ownership. To rebut defendant's ownership there was evidence that a third person, who was not questioned, was sitting in the back seat beside the bag which the officer seized. Also, although the officer testified that he saw defendant place a bag in the car, there was no evidence that this was the only bag in the car. Further, defendant had other bags in his own vehicle and was confused as to which bag the officer had. In light of this evidence, the State has failed to prove that "there is no reasonable possibility that the admission of this evidence might have contributed to the conviction." *Id.; see also State v. Silva*, 304 N.C. 122, 133, 282 S.E. 2d 449, 456 (1981).

New trial.

Judges HEDRICK and BECTON concur.